IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| MARVIN DEAN GOODSON | § | |
| v. | § | CIVIL ACTION NO. 6:05cv4 |
| DR. LEWIS BROWNE, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Marvin Goodson, an inmate of the Gregg County Jail proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding. 28 U.S.C. §636(c).

An evidentiary hearing was conducted pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985) on April 27, 2005. At this hearing, Goodson said that between December of 2004 and January of 2005, he was denied pain medication for his arthritis. Goodson stated that he filed a medical request, and the nurse told him that he would have to see the doctor. An appointment was scheduled, and when he saw Dr. Browne, Goodson testified, he mentioned that he was filing civil lawsuits over some incidents which had happened to him. Dr. Browne said that this was "a waste of taxpayers' money" and refused to shake his hand when he left.

After this, Goodson says, he was denied pain medication for 17 days, and then began to receive them again. He quoted Dr. Browne as saying "you sued me, and now you expect me to help you?" However, Goodson did not make clear when this statement was made.

Goodson concedes that Dr. Browne gave him a pain medication called Naprosyn, but complained that it was not effective. Now, he says, he has to ask for medication each time he needs some, and all he can get is Tylenol.

1

In the past, Goodson says that he was on a medication called Darvocet. He conceded that this was a narcotic and not available to inmates, but said that there was no reason that anyone should have to live in pain.

Goodson testified that Dr. Browne was the main person whom he wanted to sue. He stated that the county commissioner, Bill Stout, was named as a defendant because he was responsible for Dr. Browne's hiring. Goodson stated that he did not have a claim against Gregg County Sheriff Maxey Cerliano, Nurse Alexander, the City of Longview, or the State of Texas; in fact, he stated that he was "real pleased" with the treatment he had received from Nurse Alexander.

Goodson said that he had known Dr. Browne for a long time, and had been receiving treatment from the doctor for some 18 years. He conceded that Dr. Browne was always reluctant to give prescriptions for pain medication, even during times when he was not in jail.

Nurse Alexander also appeared at the <u>Spears</u> hearing and gave sworn testimony concerning Goodson's medical records, which were introduced into evidence without objection. The Court has reviewed these medical records.

These records show that Goodson filed a very large number of requests for medical treatment. Between December 1, 2004, and January 31, 2005, Goodson filed 96 requests for medical care. The vast majority of these complained that he was in pain, and the response was to order medication for him -- sometimes Tylenol, sometimes Motrin, both of which are common pain medications.

On December 9, 2004, Goodson filed a medical request asking for pain medication, and the response was that no medications could be given to him by Dr. Browne's order. On December 15, he again requested pain medication, and the response was that he could not get medications until Dr. Browne reviewed his X-ray.

The doctor's notes show that on December 8, 2004, Dr. Browne wrote that Goodson complained of neck, back, and shoulder pain and reported a history of arthritis. Dr. Browne stated that Goodson showed apprehension regarding the exam and palpation, but that there was no crepitance (i.e. a crackling or grinding sound from the bones or joints) and only mild limitations on

movement. Dr. Browne stated that Goodson was in no obvious pain and was "smiling and grinning; he wrote that he would get Goodson's X-rays from the hospital and that Goodson could have no medications until he saw the X-rays, and that he, Dr. Browne, was "unimpressed" with the findings of the physical exam.

On December 15, 2004, Dr. Browne wrote that the X-rays showed <u>mild</u> osteoarthritis of the AC joint, underlining the word "mild." He said that this was a non-significant finding and that all Goodson needed was Tylenol for pain.

On December 25, Goodson complained of an upset stomach and the nurse ordered Mylanta. That same day, he filed a medical request complaining of pain and Alexander replied that he would be put on the next available doctor's list.

On December 29, Goodson filed a medical request saying that he needed "pain management," and Dr. Browne replied that Goodson did not need "pain management," but only Tylenol. The doctor added that Goodson did not need to risk using NSAID's (non-steroidal anti-inflammatory drugs) and noted that Goodson was not on medication when he arrived at the jail. The following day, Goodson complained of pain in his shoulder and was ordered Tylenol by the nurse. Another complaint of pain, dated December 30, received the notation that per Dr. Browne, Goodson could only receive Tylenol.[1] During the month of January, Goodson was ordered Tylenol 53 times in response to complaints of pain. On two occasions in January of 2005, Goodson requested stronger medications, including soma and Vicodin, as well as Xanax, an anti-anxiety drug. The response was that none of these medications are available in the jail.

Throughout February of 2005, Goodson continued to complain of pain, receiving Tylenol on numerous occasions. On March 8, 2005, he complained of pain and requested a medication called Darvocet, and was told at that time that he was on Naprosyn. On March 11, 2005, Goodson was admitted to the hospital with a complaint of rectal bleeding, and was diagnosed with a possible

---

[1]Tylenol is not an NSAID. Goodson had previously received NSAID medications such as Motrin.

peptic ulcer; CT scans were also taken of his chest and abdomen, which revealed pleural based pulmonary nodules which had been previously noted by scans taken in July of 2004, but no other problems. Blood tests were run and an EGD test, which is an examination of the esophagus and stomach with a camera, was performed, showing that Goodson had a hiatal hernia at the gastroesophageal junction without esophagitis, as well as gastro-duodenitis. Dr. Torres recommended that Goodson receive acid suppression therapy and that he avoid NSAID's, as well as further treatment if symptoms persisted.

## Legal Standards and Analysis

As Goodson testified, the essence of his lawsuit is his claim that Dr. Browne was deliberately indifferent to his serious medical needs. The Fifth Circuit has held that deliberate indifference to an inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997); Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir. 1989). Simple disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985); Norton, 122 F.3d at 293.

More specifically, the Court has held that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference; rather, the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional medical treatment is a classic example of a matter for medical judgment, and the failure to alleviate a significant risk of which the officials should have perceived, but did not, is insufficient to show deliberate indifference. Domino v. TDCJ-ID, 239 F.3d 752, 756 (5th Cir. 2001).

In this regard, it should be noted that malpractice alone is not grounds for a constitutional claim, and that negligent or mistaken medical treatment or judgment does not implicate the Eighth

Amendment and does not provide the basis for a civil rights action. Varnado v. Collins, 920 F.2d 320, 321 (5th Cir. 1991); Graves v. Hampton, 1 F.3d 315, 319-20 (5th Cir. 1993). Furthermore, the fact that the medical care provided is not "the best that money can buy" does not amount to deliberate indifference to serious medical needs. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). The Fifth Circuit has held that an inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs. Spears v. McCotter, 766 F.2d at 181.

In this case, Goodson's testimony and the medical records show that Dr. Browne was not deliberately indifferent to his serious medical needs. He routinely complained of pain and was routinely ordered pain medications. While he could not get the pain medications that he specifically requested, Darvocet, Vicodin and Soma, these are narcotics and thus not provided in jail, according to Nurse Alexander's testimony. Xanax is not a narcotic but it is a psychotropic medication and thus also not available. Instead, Goodson was given Tylenol and Motrin, pain relievers used by millions of Americans, including many who, like Goodson, suffer from arthritis. See, e.g., http://www.allaboutarthritis.com (discussing the common usage of Tylenol and Motrin in the treatment of arthritis). The fact that these medications were not as effective as Goodson he would have liked does not set out a constitutional violation; there is no constitutional right to a non-existent miracle cure. Cf. Bailey v. Gardebring, 940 F.2d 1150, 1155 (8th Cir. 1991).

Although the medical records reflect several occasions on which Dr. Browne expressed skepticism concerning Goodson's complaints, these records also show that despite this skepticism, Dr. Browne nonetheless continued to provide Goodson with medical care. When Dr. Browne examined Goodson on December 8, 2004, he noted that Goodson was "smiling and grinning" and in "no obvious pain, but nonetheless wrote that he would review copies of Goodson's X-rays from the hospital. On April 4, 2005, Goodson complained of dizziness and Dr. Browne expressed skepticism of this claim as well, but said that he would run a complete blood count to ensure that Goodson was not anemic. On April 7, Dr. Browne wrote that he did look at the results of the

complete blood count and that Goodson had no significant anemia, but that the level was low due to Goodson's previous bleeding episode. Dr. Browne wrote that Goodson probably does need to be on FeSO4 (iron sulfate) for the low blood count.

Goodson has failed to show that the treatment that he received amounted to deliberate indifference to his serious medical needs. He had numerous tests and examinations, and was taken to the hospital for treatment in March when he experienced a bleeding problem. While Dr. Browne's bedside manner may not have been to his liking, and while the doctor may have been skeptical concerning his claims, neither of these facts amount to a violation of the Constitution. Although Goodson complained that Dr. Browne did not like to prescribe pain medications, he acknowledged that the doctor had always felt this way, and that this reluctance was not unique to his, Goodson's, circumstances. Goodson's claim against Dr. Browne is without merit.

Goodson sued Bill Stout, a county commissioner, apparently seeking liability on the part of Gregg County for the hiring of Dr. Browne. In Board of County Commissioners of Bryan County, Oklahoma v. Brown, 117 S.Ct. 1382 (1997), the Supreme Court rendered a decision on the liability of counties in Section 1983 lawsuits. That case involved the allegedly improper hiring of a sheriff's deputy without adequate review of his background, which included a record of driving infractions as well as guilty pleas to misdemeanors including assault and battery, resisting arrest, and public drunkenness.

The Court held that plaintiffs seeking to impose liability on a municipality under Section 1983 must identify a municipal policy or custom that caused the plaintiff's injury. A "policy" refers to decisions of a duly constituted legislative body or those officials whose acts may fairly be said to be those of the municipality, while a "custom" is a practice which has not been formally approved by an appropriate decision-maker, but which is so widespread as to have the force of law. A municipality may not be held liable solely on a theory of *respondeat superior*. Brown, 117 S.Ct. at 1388.

The Supreme Court cautioned that it is not enough for a plaintiff to identify conduct properly attributable to the municipality; rather, the plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged. In other words, the plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a causal link between the municipal action and the deprivation of federal rights. Brown, 117 S.Ct. at 1388.

There are two general types of cases which can arise in the realm of municipal liability. The first of these is where a plaintiff claims that a particular municipal action itself violates the law, or directs an employee to do so. Section 1983 itself contains no state-of-mind requirement independent of that necessary to state a violation of the underlying federal right, but the plaintiff must always show the culpable state of mind necessary to establish the underlying constitutional violation. The Supreme Court observed that proof that a municipality's legislative body or authorized decision-maker intentionally deprived a plaintiff of a federal protected right necessarily shows that the municipality acted culpably, as does a conclusion that the action taken or directed by the municipality or its authorized decision-maker itself violates federal law. Brown, 117 S.Ct. at 1388-89.

The second type of case is that in which no allegation is made that the municipal action itself violated federal law, or that the municipality directed or authorized the violation of federal rights. The Supreme Court stated that these cases present much more difficult problems of proof because the fact that the plaintiff suffered a deprivation of federal rights at the hands of a municipal employee is not itself enough to permit an inference of municipal culpability and causation. Brown, 117 S.Ct. at 1389-90. Thus, in the context of the facts of Brown, the Court held that a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences; a showing of simple or even heightened

negligence will not suffice. Brown, 117 S.Ct. at 1390; *see also* Colle v. Brazos County, Texas, 981 F.2d 237, 244 (5th Cir. 1993).

In this case, Goodson has failed to show that either Gregg County or Commissioner Stout acted with deliberate indifference in hiring Dr. Browne, nor that any policy or custom on the part of Gregg County resulted in a constitutional violation. In fact, Goodson has failed to show that a constitutional violation took place at all. *See generally* Gibbs v. King, 779 F.2d 1040, 1046 n.6 (5th Cir.), *cert. denied* 476 U.S. 1117 (1986) (holding that absent primary liability, there can be no supervisory liability). Goodson's claim against County Commissioner Bill Stout is without merit.

Finally, at the Spears hearing, Goodson acknowledged that he had no claim against Gregg County Sheriff Maxey Cerliano, Nurse Alexander, the City of Longview, or the State of Texas, who are the remaining Defendants in the case. A review of the pleadings, records, and testimony shows that Goodson was correct in this assessment and that no claim has been set out against any of these parties. Goodson's claims against Cerliano, Alexander, the City of Longview, and the State of Texas should be dismissed.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327,

8

(1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Goodson's claims lack any arguable basis in law and fail to state a claim upon which relief may be granted in federal court.  Consequently, these claims may be dismissed as frivolous under 28 U.S.C. §1915A(b).  *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993).  It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous.  It is further

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

So **ORDERED** and **SIGNED** this **29** day of **April, 2005.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE